Mark R. Thierman, Nev. Bar No. 8285
mark@thiermanbuck.com
Joshua D. Buck, Nev. Bar No. 12187
josh@thiermanbuck.com
Leah L. Jones, Nev. Bar No. 13161
leah@thiermanbuck.com
Joshua R. Hendrickson, Nev. Bar No. 12225
joshh@thiermanbuck.com
**THIERMAN BUCK LLP**
7287 Lakeside Drive
Reno, Nevada 89511
Tel. (775) 284-1500
Fax. (775) 703-5027

Christian Gabroy, Nev. Bar No. 8805
christian@gabroy.com
Kaine Messer, Nev. Bar No. 14240
kmesser@gabroy.com
**GABROY LAW OFFICES**
The District at Green Valley Ranch
170 South Green Valley Parkway, Suite 280
Henderson, Nevada 89012
Tel. (702) 259-7777
Fax. (702) 259-7704

*Attorneys for Plaintiff and the Putative Classes*

# UNITED STATE DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| EMMANUEL FLORES, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>DOMINO'S PIZZA LLC; and DOES 1 through 50, inclusive,<br><br>Defendant(s). | Case No. 2:20-cv-02233-KJD-EJY<br><br>**FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**(EXEMPT FROM ARBITRATION PURSUANT TO NAR 5)**<br><br>1) Failure to Pay Minimum Wage and Overtime in Violation of 29 U.S.C. § 201, *et seq.*;<br><br>2) Failure to Pay Minimum Wage and Overtime in Violation of Nevada law; |

3) Failure to Pay Daily Overtime in Violation of Nevada law; and

4) Failure to Timely Pay All Wages Due and Owing in Violation of Nevada law.

**LIEN REQUESTED PURSUANT TO NRS 608.050**

**JURY TRIAL DEMANDED**

COMES NOW Plaintiff EMMANUEL FLORES, on behalf of himself and all others similarly situated and alleges the following:

All allegations in the Complaint are based upon information and belief except for those allegations that pertain to the Plaintiff named herein and his counsel. Each allegation in the Complaint either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over both the state and federal law claims alleged herein. The Court has jurisdiction over the federal claims alleged herein pursuant to Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). The Court has jurisdiction over the state law claims alleged herein under the Class Action Fairness Act ("CAFA") because the amount in controversy exceeds $5 million and this action was previously removed by Defendant on this basis (ECF No. 1). Furthermore, an employee seeking to recover unpaid wages has a private right of action pursuant to the Nevada Constitution, Article 15 Section 16, and Nevada Revised Statute ("NRS") sections 608.140, 608.018, and 608.020-.050. *See Neville v. Eighth Judicial Dist., Terrible Herbst, Inc.*, 133 Nev. Adv. Op. 95 (Dec. 7, 2017), 406 P.3d 499 (2017); *HG Staffing, LLC, et al. v. Second Judicial District Court,* Nevada Supreme Court Case No. 79118 (May 7, 2020) ("In *Neville v. Eight Judicial District Court*, 133 Nev. 77, 406 P.3d 499 (2017), we held, by necessary implication, the exhaustion of administrative remedies is not required before filing an unpaid-wage claim in district court."). Plaintiff has made a proper demand for wages due pursuant to NRS 608.140.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

2. Plaintiff also claims a private cause of action to foreclose a lien against the property owner for wages due pursuant to NRS 608.050.

3. Venue is proper in this Court because one or more of the Defendants named herein maintains a principal place of business or otherwise is found in this judicial district and many of the acts complained of herein occurred in Clark County, Nevada.

## PARTIES

4. Plaintiff EMMANUEL FLORES (hereinafter "Plaintiff" or "FLORES") is a natural person who is and was a resident of the State of Nevada and was employed by Defendant Domino's Pizza, LLC, as a non-exempt hourly employee from on or about May 2019 to on or about August 13, 2020.

5. Defendant DOMINO'S PIZZA LLC is a foreign corporation that conducts business in the state of Nevada and is an employer engaged in commerce under the provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.* and is an employer under NRS 608.011. Defendant's agent of service is located at 701 S. Carson Street, Suite 200, Carson City, Nevada 89701.

6. The Defendant named herein is the employer of the Plaintiff and all FLSA and Nevada Class Members alleged herein. The identity of DOES 1-50 is unknown at the time and the Complaint will be amended at such time when the identities are known to Plaintiff. Plaintiff is informed and believes that each Defendant sued herein as DOE is responsible in some manner for the acts, omissions, or representations alleged herein and any reference to "Defendant," "Defendants," or "Domino's" herein shall mean "Defendants and each of them."

## FACTUAL ALLEGATIONS

7. According to its company profile on Dun & Bradstreet, "Domino's Pizza LLC is located in MI, United States and is part of the Restaurants Industry. Domino's Pizza LLC has 10,000 employees across all of its locations. There are 740 companies in the Domino's Pizza LLC corporate family." *See* https://www.dnb.com/business-directory/company-profiles.dominos_pizza_llc.e2b4a634715654c7f5431ef585f4ef6d.html (last visited Oct. 22, 2020).

- 3 -
FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

8. Defendant sells pizza and other food items to customers, whether they carry out the food or have it delivered.

9. Plaintiff has been employed by Defendant as a delivery driver at the Domino's location at 6101 West Charleston Avenue in Las Vegas, Nevada.

10. Plaintiff was paid an hourly rate of $8.25 per hour from the start of his employment with Defendant until on or about June 30, 2020, and $9.00 per hour from July 1, 2020 until the date of his separation from employment on August 13, 2020. He was not offered, and did not receive, health insurance benefits during his employment with Defendant.

11. Plaintiff was not paid overtime at 1 ½ times his base hourly wage when he worked over 8 hours in a workday.[1]

***Defendant Fails To Reimburse Its Delivery Drivers For Employer Related Expenses***

12. Defendant requires its delivery drivers to maintain and pay for safe, legally-operable, and insured automobiles when delivering pizza and other food items.

13. Defendant's delivery drivers incur costs for gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, and depreciation ("automobile expenses") while delivering pizzas for the primary benefit of Defendant.

14. Despite Defendant's requirement that delivery drivers use their own vehicles to deliver food items to Defendant's customers, Defendant does not reimburse its delivery drivers for the cost of operating the delivery vehicles.

15. During the applicable limitations period, the IRS business mileage reimbursement rate ranged between $.58 and $.535 per mile.[2] Likewise, reputable companies that study the cost

---

[1] In Nevada, employees who make less than 1 ½ times the applicable minimum wage must be paid overtime when they work over 8 hours in a workday. A "workday" in Nevada is defined as "a period of 24 consecutive hours which begins when the employee begins work."

[2] The reimbursement rates during the relevant time period are as follows:

| Year | Rate |
|------|------|
| 2020 | $.575 |
| 2019 | $.58 |
| 2018 | $.545 |
| 2017 | $.535 |

of owning and operating a motor vehicle and/or reasonable reimbursement rates, including the AAA, have determined that the average cost of owning and operating a vehicle in 2019 ranged between $.7929 to $.5331 per mile depending on the number of miles driven.[3] These figures represent a reasonable approximation of the average cost of owning and operating a vehicle for use in delivering pizzas.

16. The driving conditions associated with the pizza delivery business cause more frequent maintenance costs, higher costs due to repairs associated with driving, and more rapid depreciation from driving as much as, and in the manner of, a delivery driver. Defendant's delivery drivers further experience lower gas mileage and higher repair costs than the average driver used to determine the average cost of owning and operating a vehicle described above due to the nature of the delivery business, including frequent starting and stopping of the engine, frequent braking, short routes as opposed to highway driving, and driving under time pressures.

17. Defendant's systematic failure to reimburse automobile expenses constitutes a "kickback" to Defendant such that the hourly wages they pay to Plaintiff and Defendant's other delivery drivers are not paid free and clear of all outstanding obligations to Defendant.

*Defendant's Failure to Reimburse Automobile Expenses Causes Minimum Wage and Overtime Violations*

18. Plaintiff was paid the Nevada minimum wage rate during his employment with Defendant.

19. During that time period, the federal minimum wage rage was $7.25 and the Nevada minimum wage rate was $8.25 and $9.00 for employees who were not offered qualified health benefits. Plaintiff was never offered or provided with qualified health benefits.

20. Throughout his employment with Defendant, Plaintiff estimates that he worked approximately 5 shifts per week and worked approximately 6 hours per shift. On average,

---

*See* https://www.irs.gov/tax-professionals/standard-mileage-rates (last visited Oct. 22, 2020).

[3]*See, e.g.,* https://exchange.aaa.com/wp-content/uploads/2019/09/AAA-Your-Driving-Costs-2019.pdf (last visited Oct. 22, 2020) (average cost per mile for miles driven less than 10,000 per year in 2019 was $.7929)

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

1  Plaintiff completed 18 deliveries per shift; Plaintiff estimates that he drove approximately 5-6 miles per delivery. Defendant required Plaintiff to use an App for deliveries and, upon information and belief, said App tracked the exact miles that Plaintiff and all other putative Class Members drove for deliveries during their employment.

21. Plaintiff estimates that he worked approximately 321 shifts during his employment with Defendant. Based on Plaintiff's good faith and reasonable estimates of the amount of miles that he drove per delivery and the amount of deliveries that he made per shift, Plaintiff can reasonable estimate that he drove approximately 108 miles per shift/540 miles per workweek/34,668 miles over the course of his employment.

22. The IRS business mileage reimbursement rate during Plaintiff's employment with Defendant was $.58 per mile, which is a reasonable approximation of the automobile expenses incurred in delivering pizzas. Using the IRS rate as a reasonable approximation of Plaintiff's automobile expenses, every mile driven on the job decreased Plaintiff's net wages by approximately $.58.

23. Since Plaintiff estimates that he drove approximately 34,668 miles during his employment with Defendant, Plaintiff has "kicked back" to Defendant an estimated amount of $20,107.44 in wages to Defendant that should have been paid free and clear to Plaintiff by Defendant. During the pay period from June 8, 2020 to June 21, 2020, for example, Plaintiff worked a total of 56.49 hours. For the workweek from June 8 to June 14, 2020, Plaintiff estimates that he worked his normal 5-shifts per week and thus earned approximately $247.50 in wages that workweek. Plaintiff further estimates that he drove approximately 540 miles for Defendant making deliveries during that workweek, which would equate to approximately $313.20 in reimbursable expenses that Plaintiff incurred but for which he has not been reimbursed. Since Plaintiff was not compensated him minimum wages free and clear, and instead was forced to pay out of his own pocket the equivalent of $313.20 in automobile expenses, Plaintiff was actually paid -$65.70 in wages for the workweek from June 8, 2020 to June 21, 2020. If Plaintiff were compensated at the federal minimum wage rate of $7.25 per hour, he would have only earned $217.50 for that workweek and thus his wage deficit would have been even greater at -$95.70.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

Ultimately, the precise amount of miles driven by Plaintiff and the precise amount of wages earned are records that rest in the sole possession of Defendant.

24. All of Defendant's delivery drivers had similar experiences to those of Plaintiff. They were subject to the same "no reimbursement policy"; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid hourly wages at or very near the applicable federal and/or Nevada minimum wages.

25. Based on the allegations set forth above, Defendant's average under-reimbursement of automobile expenses over the prior three years has exceeded the difference between hourly wages in each state in which Defendant operates and the federal and state minimum wage during part or all of the limitations period, thereby resulting in company-wide minimum wage violations.

26. The net effect of Defendant's "no reimbursement" policy, instituted and approved by company managers, is that it willfully failed to pay minimum wages required by federal and state law. Defendant has thereby enjoyed ill-gained profits at the expense of their employees. Indeed, Plaintiff's claims should not come as a surprise to Defendant. It has been a party to other actions that have alleged the same improper reimbursement policies that are at issue here in other states. *See, e.g.*, *Clark v. Pizza Baker, Inc.*, No. 2:18-cv-157 (S.D. Ohio Sep. 23, 2019) (listing Domino's Pizza, LLC as a named-defendant in a class action for unpaid minimum wages in Ohio).

### *Defendant's Policy Of Not Paying Daily Overtime*

27. In addition to Defendant's unlawful minimum wage practices, Defendant also maintained an unlawful policy of not paying daily overtime to non-exempt hourly employees who earned 1 ½ times less than the applicable minimum wage.

28. Plaintiff frequently worked over 8 hours in any given workday. On many occasions, Plaintiff would work a night shift until the early morning hours and then return to work a day shift. The number of hours he worked in a workday under Nevada law was over 8 hours in a 24 hour period of time. But despite having worked more than 8 hours in a 24 hour period of time, Defendant failed to compensate Plaintiff at 1 ½ times his regular rate of pay for the overtime hours he worked.

29. Upon information and belief, Defendant maintained a company-wide policy and practice of refusing to pay daily overtime wages to Nevada employees who worked over 8 hours in a workday. This "no daily overtime" policy has always been common to all non-exempt hourly paid employees at Defendant's locations in the state of Nevada.

## CLASS ACTION ALLEGATIONS

30. Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

31. Plaintiff brings this action on behalf of himself and all other similarly situated employees as both a collective action under the FLSA and a class action under Rule 23 of the Federal Rules of Civil Procedure.

32. The **FLSA Class** is defined as "All hourly paid delivery drivers employed by Defendant in the United States at any time within 3 years from the date of filing this action until judgment."

33. Collective action certification of the FLSA Class is appropriate under the FLSA because (A) Defendant employed Plaintiff as an hourly paid pizza delivery driver who was not reimbursed for his automobile expenses and, as a result of Defendant's "no reimbursement" policy, Plaintiff did not earn at least the federal minimum wage of $7.25 for each hour he worked; (B) Plaintiff's situation is similar to those he seeks to represent because, upon information and belief, Defendant's "no reimbursement policy applied to all pizza delivery drivers employed by Defendant; (C) Common questions exist as to whether Defendant's no reimbursement policy deprived Plaintiff and members of the putative FLSA Class at least their minimum wages for all their hours worked. Plaintiff has signed a Consent to Join form, which is attached to this First Amended Complaint as Exhibit "A".

34. The **Nevada Class** is defined as "All hourly paid delivery drivers employed by Defendant in the state of Nevada at any time within 2 years from the date of filing this action until judgment."

35. The **Nevada Daily Overtime Class** is defined as "All hourly paid non-exempt persons employed by Defendant in the state of Nevada who earned less than 1 ½ times the

applicable minimum wage and who worked over eight (8) hours in a workday at any time within 3 years from the date of filing this action until judgment."

36. The **Waiting Time Penalty Class** is defined as "All Nevada Class and Nevada Daily Overtime Class Members who are former employees."

37. Class treatment is appropriate under Rule 23's class certification mechanism because:

    A. <u>The Classes are Sufficiently Numerous</u>: Upon information and belief, Defendant employs, and has employed, in excess of 1,000 Nevada, Nevada Daily Overtime, and Waiting Time Penalty Class Members within the applicable time period. Because Defendant is legally obligated to keep accurate payroll records, Plaintiff alleges that Defendant's records will establish the members of these Classes as well as their numerosity.

    B. <u>Plaintiff's Claims are Typical to Those of Fellow Class Members</u>: Each Class Member is and was subject to the same practices, plans, or policies as Plaintiff: (1) Whether Defendant's "no reimbursement" policy deprived Plaintiff and members of the Nevada Class minimum wages and overtime according to Nevada law; (2) Whether Defendant compensated Plaintiff and members of the Nevada Daily Overtime Class daily overtime wages when they worked over 8 hours in a workday; (3) Whether Plaintiff and members of the Waiting Time Penalty Class are entitled to waiting time penalties for the failure to pay them minimum, regular, and overtime wages owed.

    C. <u>Common Questions of Law and Fact Exist</u>: Common questions of law and and fact exist and predominate as to Plaintiff and the Class Members, including, without limitation: Whether Defendant's "no reimbursement" policy deprived Plaintiff and Nevada Class Members the minimum wage and overtime guaranteed by Nevada law; Whether Defendant failed to pay Plaintiff and the Nevada Daily Overtime Class Members one and one half times their regular rate for all hours worked in excess of 8 hours a workday; and Whether Defendant failed to pay Plaintiff and the Waiting Time Penalty Class Members all their wages due and owing in violation of NRS 608.020-050.

D. <u>Plaintiff is an Adequate Representative of the Class</u>: Plaintiff will fairly and adequately represent the interests of the Class because Plaintiff is a member of all the Classes, he has issues of law and fact in common with all members of the Classes, and his interests are not antagonistic to Class members. Plaintiff and his counsel are aware of their fiduciary responsibilities to Class Members and are determined to discharge those duties diligently by vigorously seeking the maximum possible recovery for Class Members.

E. <u>Predominance/Superior Mechanism</u>: Class claims predominate and a class action is superior to other available means for the fair and efficient adjudication of this controversy. Each Class Member has been damaged and is entitled to recovery by reason of Defendant's illegal policy and/or practice of failing to compensate its employees in accordance with Nevada wage and hour law. The prosecution of individual remedies by each Class Member will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class Members' rights and the disposition of their interest through actions to which they were not parties.

## FIRST CAUSE OF ACTION

**Failure to Pay Minimum Wages and Overtime in Violation of the FLSA**

**(On Behalf of Plaintiff and the FLSA Class Against Defendant)**

38. Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

39. Pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*, Plaintiff and FLSA Class Members are entitled to compensation at their minimum wage and overtime rate for all hours actually worked.

40. 29 U.S.C. § 206(a)(l) states that "Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates: (1) except as otherwise provided in this section, not less than (A) $5.85 an hour beginning on the 60th day after the enactment of the Fair Minimum

Wage Act of 2007; (B) $6.55 an hour, beginning 12 months after that 60th day; and C) $7.25 an hour, beginning 24 months after that 60th day."

41. 29 U.S.C. Section 207(a)(1) provides as follows: "Except as otherwise provided in the section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

42. By failing to reimburse Plaintiff and FLSA Class Members for their automobile expenses as set forth above, Defendant has failed to pay Plaintiff and the FLSA Class Members their minimum wages and appliable overtime for all hours worked.

43. Defendants' unlawful conduct has been widespread, repeated, and willful. Defendants knew or should have known that its policies and practices have been unlawful and unfair.

44. Wherefore, Plaintiff demands for himself and for all others similarly situated, that Defendant pay Plaintiff and all other members of the FLSA Class their unpaid minimum wages and overtime for all hours worked during the relevant time period alleged herein together with liquidated damages, attorneys' fees, costs, and interest as provided by law.

## SECOND CAUSE OF ACTION

**Failure to Pay Minimum Wages and Overtime in Violation of Nevada Law**

**(On Behalf of Plaintiff and the Nevada Class Against Defendant)**

45. Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

46. Article 15 Section 16 of the Nevada Constitution sets forth the minimum wage requirements in the State of Nevada and further provides that "[t]he provisions of this section may not be waived by agreement between an individual employee and an employer. . . . An employee claiming violation of this section may bring an action against his or her employer in the courts of this State to enforce the provisions of this section and shall be entitled to all remedies available

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

under the law or in equity appropriate to remedy any violation of this section, including but not limited to back pay, damages, reinstatement or injunctive relief. An employee who prevails in any action to enforce this section shall be awarded his or her reasonable attorney's fees and costs."

47.  NRS 608.250 provides the following minimum wage rates to be paid, without discount, to all Nevada employees:

> (a)  Beginning July 1, 2019:
>     (1)  If the employer offers health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $7.25 per hour worked.
>     (2)  If the employer does not offer health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $8.25 per hour worked.
>
> (b)  Beginning July 1, 2020:
>     (1)  If the employer offers health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $8.00 per hour worked.
>     (2)  If the employer does not offer health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $9.00 per hour worked.
>
> (c)  Beginning July 1, 2021:
>     (1)  If the employer offers health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $8.75 per hour worked.
>     (2)  If the employer does not offer health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $9.75 per hour worked.
>
> (d)  Beginning July 1, 2022:
>     (1)  If the employer offers health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $9.50 per hour worked.
>     (2)  If the employer does not offer health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $10.50 per hour worked.
>
> (e)  Beginning July 1, 2023:
>     (1)  If the employer offers health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $10.25 per hour worked.

      (2) If the employer does not offer health benefits to the employee in the manner described in <u>Section 16 of Article 15</u> of the Nevada Constitution, $11.25 per hour worked.

 (f) Beginning July 1, 2024:
      (1) If the employer offers health benefits to the employee in the manner described in <u>Section 16 of Article 15</u> of the Nevada constitution, $11.00 per hour worked.
      (2) If the employer does not offer health benefits to the employee in the manner described in <u>Section 16 of Article 15</u> of the Nevada Constitution, $12.00 per hour worked.

48. NRS 608.018(1) provides as follows:

> An employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate less than 1 1/2 times the minimum rate prescribed pursuant to NRS 608.250 works: (a) More than 40 hours in any scheduled week of work; or (b) More than 8 hours in any workday unless by mutual agreement the employee works a scheduled 10 hours per day for 4 calendar days within any scheduled week of work.

49. NRS 608.018(2) provides as follows:

> An employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate not less than 1 1/2 times the minimum rate prescribed pursuant to NRS 608.250 works more than 40 hours in any scheduled week of work.

50. As alleged herein, Defendant has failed to reimburse delivery drivers their automobile expenses to such an extent that it diminishes these employees' wages beneath Nevada's minimum wage and overtime provisions.

51. Defendant knew or should have known that its "no reimbursement" policy and methodology fails to compensate delivery drivers at the Nevada minimum wage and deprived them overtime at the correct overtime rate of compensation.

52. Plaintiff and all similarly situated delivery drivers are victims of a uniform and employer-based compensation policy. This uniform policy, in violation of the Nevada Constitution, has been applied, and continues to be applied, to all delivery driver employees in Defendant's Nevada restaurants.

- 13 -
FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

53. Plaintiff and all similarly situated employees are entitled to damages equal to the minimum wage minus actual wages received after deducting reasonably approximated automobile expenses, and the applicable overtime rate of compensation, if any, within two years from the date of filing this action

54. Wherefore, Plaintiff demands for himself and for all other Nevada Class Members that Defendant pay Plaintiff and Nevada Class Members their unpaid minimum wages and overtime for all hours worked during the relevant time period alleged herein together with attorneys' fees, costs, interest, and punitive damages, as provided by law.

### THIRD CAUSE OF ACTION

**Failure to Pay Daily Overtime Wages in Violation of Nevada Law**

**(On Behalf of Plaintiff and the Nevada Daily Overtime Class Against Defendant)**

55. Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

56. NRS 608.140 provides that an employee has a private right of action for unpaid wages.

57. NRS 608.018(1) provides as follows:

> An employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate less than 1 1/2 times the minimum rate prescribed pursuant to NRS 608.250 works: (a) More than 40 hours in any scheduled week of work; or (b) More than 8 hours in any workday unless by mutual agreement the employee works a scheduled 10 hours per day for 4 calendar days within any scheduled week of work.

58. NRS 608.018(2) provides as follows:

> An employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate not less than 1 1/2 times the minimum rate prescribed pursuant to NRS 608.250 works more than 40 hours in any scheduled week of work.

59. As described above, Defendant maintained a policy and/or practice of illegal shift jamming (i.e., refusing to pay daily overtime when Plaintiff and members of the Nevada Daily

Overtime Class worked over 8 hours in a workday). As a result, Plaintiff and Nevada Daily Overtime Class Members have been denied overtime compensation according to Nevada law.

60. Wherefore, Plaintiff demands for himself and all Nevada Daily Overtime Class Members that Defendant pay Plaintiff and Nevada Daily Overtime Class Members one and one half times their "regular rate" of pay for all hours worked in excess of eight (8) hours in a workday during the relevant time period together with attorneys' fees, costs, interest, and punitive damages, as provided by law.

## FOURTH CAUSE OF ACTION

### Waiting Time Penalties Pursuant to Nevada Law

### (On Behalf of Plaintiff and the Waiting Time Penalty Class Against Defendant)

61. Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

62. NRS 608.140 provides that an employee has a private right of action for unpaid wages.

63. NRS 608.020 provides that "[w]henever an employer discharges an employee, the wages and compensation earned and unpaid at the time of such discharge shall become due and payable immediately."

64. NRS 608.040(1)(a-b), in relevant part, imposes a penalty on an employer who fails to pay a discharged or quitting employee: "Within 3 days after the wages or compensation of a discharged employee becomes due; or on the day the wages or compensation is due to an employee who resigns or quits, the wages or compensation of the employee continues at the same rate from the day the employee resigned, quit, or was discharged until paid for 30-days, whichever is less."

65. NRS 608.050 grants an "employee lien" to each discharged or laid-off employee for the purpose of collecting the wages or compensation owed to them "in the sum agreed upon in the contract of employment for each day the employer is in default, until the employee is paid in full, without rendering any service therefore; but the employee shall cease to draw such wages or salary 30 days after such default."

66. By failing to pay Plaintiff and the Waiting Time Penalty Class Members their minimum, regular, and overtime wages in violation of state law, Defendant has failed to timely remit all wages due and owing to Plaintiff and the Waiting Time Penalty Class Members.

67. Despite demand, Defendant willfully refuses and continues to refuse to pay Plaintiff and Waiting Time Penalty Class Members all the wages that were due and owing upon the termination of their employment.

68. Wherefore, Plaintiff and the Waiting Time Penalty Class Members demand thirty (30) days of pay as waiting penalties under NRS 608.040 and 608.140, and thirty (30) days of pay as waiting penalties under NRS 608.050 and 608.140, together with attorneys' fees, costs, interest, and punitive damages, as provided by law.

## PRAYER FOR RELIEF

Wherefore Plaintiff, by himself and on behalf of all Class Members, pray for relief as follows relating to his collective and class action allegations:

1. For an order conditionally certifying this action under the FLSA and providing notice to all members of the FLSA Class so they may participate in this lawsuit;
2. For an order certifying this action as a class action on behalf the proposed Nevada Classes and providing notice to all Class Members so they may participate in this lawsuit;
3. For an order appointing Plaintiff as the Representative of the Classes and his counsel as Class Counsel;
4. For damages according to proof for minimum and overtime rate pay under the FLSA for all hours worked;
5. For liquidated damages;
6. For damages according to proof for minimum and overtime rate pay under the Nevada law for all hours worked;
7. For damages according to proof for overtime compensation under NRS 608.018 and 608.140 for all hours worked over 8 hours per day;
8. For waiting time penalties pursuant to NRS 608.040-.050 and 608.140;

9. For a lien on the property where Plaintiff and all Nevada Class Members labored pursuant to NRS 608.050;

10. For interest as provided by law at the maximum legal rate;

11. For punitive damages;

12. For reasonable attorneys' fees authorized by statute;

13. For costs of suit incurred herein;

14. For pre-judgment and post-judgment interest, as provided by law; and

15. For such other and further relief as the Court may deem just and proper.

DATED: January 11, 2021    Respectfully Submitted,

**THIERMAN BUCK LLP**

*/s/Joshua D. Buck*
Joshua D. Buck
Mark R. Thierman
Leah L. Jones
Joshua R. Hendrickson

# EXHIBIT A

Plaintiff's Consent to Join

# EXHIBIT A

Pursuant to the Fair Labor Standards Act, ("FLSA") 29 U.S.C.S. § 216(b), the undersigned hereby gives my consent in writing to become a party plaintiff against my Employer, Former Employer, and/or any and all of its affiliated entities. I authorize the filing of a copy of this consent form in Court. I further consent to join this and/or any subsequent or amended suit against the same or related defendants for wage and hour violations.

By signing this form, I am also agreeing to be represented by attorneys, Thierman Buck, LLP, 7287 Lakeside Drive, Reno, NV 89511, and any other attorneys with whom they may associate, and authorize them to act on my behalf in all matters relating to my wage claims.

Print Name:   Emmanuel Flores

Signature:   *EMMANUEL FLORES*

Date Signed:   01 / 08 / 2021

Employer     DOMINOS

The following contact information below will be redacted before filing with the Court:

Name: █████

Address: █████

City, State & Zip: █████

Phone Number: █████

Email Address: █████

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com